IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 29, 2010

**STATE OF TENNESSEE v. CHARLES O. ROGERS**

**Appeal from the Circuit Court for Blount County**
**No. C-17715     David R. Duggan, Judge**

_____

**No. E2009-02395-CCA-R3-CD - Filed September 16, 2010**

_____

The Defendant, Charles O. Rogers, pled guilty in the Blount County Circuit Court to attempted robbery, a Class D felony, and was sentenced to three years. The trial court imposed a sentence of split confinement, ordering the Defendant to serve sixty days, on consecutive weekends, in the county jail and the balance of the sentence on community corrections. Following the filing of a violation warrant and a finding that the Defendant violated the terms of his community corrections sentence, the trial court ordered the Defendant to serve the balance of his sentence in custody. In this appeal as of right, the Defendant contends that the trial court abused its discretion by ordering the Defendant to serve his sentence. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal); Raymond Mack Garner, District Public Defender (at trial), attorneys for appellant, Charles O. Rogers.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Tammy M. Harrington, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

**OPINION**

The Defendant pled guilty on July 10, 2009, and on August 11, 2009, the Defendant tested positive for morphine. On August 18, 2009, the Defendant's community corrections officer, Brian Hensley, issued a violation warrant alleging that the Defendant violated the

conditions of his community corrections sentence by testing positive for morphine and by bringing tobacco into the jail.

Alvin Breeden, a corrections officer for the Blount County Jail, testified at the revocation hearing. Officer Breeden stated that he was working as a corrections officer on August 14, 2009, when he observed, through the use of a monitor, the Defendant sitting on his mattress in his cell with a blanket over his head. Officer Breeden stated that the mattresses are stuffed with foam, made out of plastic material, and are approximately six feet long, three feet wide, and three inches thick. Officer Breeden stated that it took him approximately one minute to arrive at the Defendant's cell and that when he arrived, the Defendant was lying on his mattress with the blanket on top of him. When Officer Breeden opened the door, he noticed the "distinct odor of cigarette smoke." He then searched the Defendant's mattress and found pieces of tobacco on the mattress and saw that the mattress was ripped open on one end. Inside the mattress, Officer Breeden found tobacco and a lighter approximately a "forearm length down inside the mat[tress]."

Mr. Hensley testified that he first met the Defendant on July 13, 2009, and that on August 11, 2009, the Defendant failed a drug screen by testing positive for opiates. The Defendant admitted that "he had bought the morphine off the street and used it." Mr. Hensley stated that it is a violation of the community corrections program to take illegal substances or medical substances without a prescription. On cross-examination, Mr. Hensley admitted that the Defendant had reported as directed and was in compliance with the program until August 11, 2009.

The Defendant testified that he had served five weekends in jail before he was caught with tobacco. He stated that he had steady employment and that he was living with his mother. He explained that he took a morphine pill before he came to jail on Friday because he wanted to "sleep the weekend away."

Relative to the tobacco charge, the Defendant testified that when he was serving his weekends in jail, he was always given a foam mattress to sleep on in his cell. The Defendant was responsible for this mattress throughout the weekend and was required to take it with him if he was moved to another cell. On one such weekend, the Defendant and his roommate were asked to move to another cell late Saturday night. The Defendant complied, grabbed his mattress, and followed the officer to the new cell. When he arrived at the new cell, the Defendant noticed that there was a mattress already in the cell. The Defendant attempted to ask the officer about the extra mattress, but the officer closed the door in the Defendant's face. The Defendant placed his mattress on top of the extra mattress. After the Defendant had been in the cell for several hours, the Defendant rolled his mattress up with the other

mattress to create a chair to sit on while eating his meal. As he was rolling the mattresses up, a plastic bag of tobacco fell out of the mattress.

The Defendant told his roommate about the tobacco, and his roommate asked if he could smoke a cigarette. The roommate, who was still sitting on his own mattress, then "pulled the blanked up over his head, proceeded to roll [a cigarette], and lit [the cigarette]." When his roommate was finished, the Defendant put all of the tobacco back inside the mattress. At that point, "the door popped open," and the officer stepped inside the cell. The Defendant admitted that he should have disclosed the tobacco to the officers when he first found it but stated that he did not bring the tobacco into the jail or smoke any of the tobacco. He said, "everybody wants to smoke in jail and there it was."

The Defendant stated that if he were released, he would live with his mother and attempt to get his job back. He stated that he did not have a substance abuse problem and did not object to undergoing a drug and alcohol assessment.

On cross-examination, the Defendant stated that he bought the morphine from a "gentleman that was serving 48 hours" in the jail. When he arrived at the jail at 5:30 p.m., he purchased the morphine for fifty dollars. The Defendant admitted that he had been on probation in the past and that he had received probation violations when he was previously on probation.

Following the hearing, defense counsel requested another sentence of split confinement with the understanding that the Defendant would be required to undergo a drug and alcohol assessment. The trial court found that the Defendant violated the conditions of his probation by testing positive for morphine and ordered the Defendant to serve his sentence in incarceration with credit for time served. The trial court stated, "I don't know whether you b[r]ought the tobacco into the jail or not, but certainly you were in possession of it inside the jail." The trial court noted the Defendant's past failures with probationary sentences and his current attempts to sleep through his weekends in jail. Additionally, the trial court noted that even if the tobacco did not belong to the Defendant, the Defendant knew that he was not supposed to possess the tobacco in jail.

ANALYSIS

The Defendant contends that the trial court's decision to revoke his community corrections sentence was "unduly harsh" when the trial court only found one violation, a single use of morphine, when concluding that the Defendant's community correction sentence should be revoked. The State responds that the trial court properly revoked the

Defendant's sentence because the Defendant admitted that he "illegally purchased and used morphine."

The decision to revoke a community corrections sentence rests within the sound discretion of the trial court and will not be disturbed on appeal unless there is no substantial evidence to support the trial court's conclusion that a violation occurred. State v. Harkins, 811 S.W.2d 79, 82-83 (Tenn. 1991). Pursuant to Tennessee Code Annotated section 40-35-311(e), the trial court is required to find that the violation of a community corrections sentence occurred by a preponderance of the evidence. In reviewing the trial court's finding, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious, rather than an arbitrary, judgment. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

Once there is sufficient evidence to establish a violation of a community corrections sentence, the trial court has the authority to revoke the community corrections sentence and order the original sentence to be served in confinement. Tenn. Code Ann. § 40-36-106(e)(3)(B). The trial court may also resentence a defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum provided for the offense committed with credit for time served while on community corrections. Tenn. Code Ann. § 40-36-106(e)(4).

The Defendant does not appear to contest the trial court's revocation of his community corrections sentence. Rather, the Defendant contends that requiring the Defendant to serve the entirety of the sentence in confinement was "unduly harsh" given the circumstances of the violation. The record reflects that, one month after being placed on community corrections, the Defendant tested positive for morphine while serving a community corrections sentence and was found in possession of tobacco while serving a weekend in jail. The record supports the trial court's decisions to revoke the community corrections sentence and to order the sentence served in confinement. We conclude that the trial court exercised a conscientious judgment in arriving at its determination. Accordingly, the judgment of the trial court is affirmed.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court revoking the Defendant's community corrections sentence and ordering service of the sentence in confinement is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE

-4-